IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ERIKA RODRÍGUEZ<br><br>Plaintiff<br><br>v.<br><br>ANDAMIOS DE PUERTO RICO, INC., ET AL.<br><br>Defendants | CIVIL NO.: 08-1408 (GAG/MEL) |

**OPINION AND ORDER**

**I.    PROCEDURAL BACKGROUND**

On December 8, 2008, plaintiff filed an amended complaint against Andamios de Puerto Rico, Inc. ("Andamios"), Servicios Sanitarios de Puerto Rico, Inc. ("Servicios"), and Manuel Álvarez ("Álvarez"). (Docket 16 at ¶¶ 4-5, 8.) The complaint alleges claims pursuant to: (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-15, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k); (2) Puerto Rico Law 69 ("Law 69"), P.R. LAWS ANN. tit. 29, § 1323; (3) Puerto Rico Law 80 ("Law 80"), P.R. LAWS ANN. tit. 29, § 185a; (4) Puerto Rico Law 100 ("Law 100"), P.R. LAWS ANN. tit. 29, § 146; (5) Puerto Rico Law 3 ("Law 3"), P.R. LAWS ANN. tit. 29, § 469; (6) Puerto Rico Law 115 ("Law 115"), P.R. LAWS ANN. tit. 29, § 194a; and (7) Puerto Rico worker's compensation law, P.R. LAWS ANN. tit. 11, § 7. On March 6, 2009, defendants filed a motion for summary judgment arguing that: (1) plaintiff cannot establish a hostile work environment; (2) plaintiff cannot establish a constructive discharge; (3) plaintiff has failed to make a *prima facie* case of discrimination; and (4) defendants have a legitimate non-discriminatory reason for its conduct that plaintiff cannot show to be pretext for discrimination. (Docket 18.) On March 30, 2009, plaintiff filed her opposition to the motion for summary judgment. (Docket 29.) On April 16, 2009, defendants filed a reply to the opposition. (Docket 34.) On May, 4, 2009, plaintiff filed a surreply.

Rodríguez v. Andamios de Puerto Rico, Inc., et al.
Civil No. 08-1408 (GAG/MEL)
Opinion and Order

(Docket 46.)

## II. Uncontested Facts

Andamios de Puerto Rico, Inc. ("Andamios") and Servicios Sanitarios de Puerto Rico ("Servicios") are both corporations under the laws of Puerto Rico, and both have their principal places of business in Trujillo Alto, Puerto Rico. (Docket 18-2 at ¶¶ 1-2; Docket 29-2 at 1.) At the time of the events stated in the complaint, Manuel Álvarez was the owner and president of both Andamios and Servicios. (Docket 18-2 at ¶ 4; Docket 29-2 at 1.) Rodríguez began working as an Assistant to the Department of Accounting for Andamios on November 17, 2003. (Docket 18-2 at ¶ 5; Docket 29-2 at 1.)

In October of 2006, Rodríguez's husband notified Álvarez of her pregnancy. (Docket 29-2 at 1; Docket 34-2 at ¶ 27.) While Álvarez did not make any express remarks regarding Rodríguez's pregnancy, he referred to it as a condition and complained when Rodríguez had to leave work early for medical appointments related to her pregnancy. (Docket 29-2 at 4; Docket 34-2 at ¶ 30; Docket 35-2 at 43-44.)[1] On or around December of 2006, Álvarez relieved Rodríguez of supervisory duties and on several occasions opened the door to her office and yelled that she was no longer the department supervisor. (Docket 29-2 at 4; Docket 34-2 at ¶ 31; Docket 35-2 at 45.)[2]

---

[1] Although defendants deny this fact in their reply to plaintiff's statement of uncontested facts, they do not support this denial with citation to evidence in the record as required by Local Rule 56(d) and Local Rule 56(e). Local Rule 56(d) requires that denials or qualifications of an opposing party's additional facts comply with Local Rule 56(e). Local Rule 56(e) provides that statements of fact will be deemed admitted unless properly controverted and that "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." Defendants simply deny plaintiff's statement of fact and cite to the answer to the complaint, not to any specific evidence in the record. (Docket 34-2 at ¶ 31.) Therefore, plaintiff's properly supported statement of fact, (Docket 29-2 at ¶ 9), is deemed admitted for purposes of evaluating the pending motion for summary judgment.

[2] See supra note 1.

2

Rodríguez v. Andamios de Puerto Rico, Inc., et al.
Civil No. 08-1408 (GAG/MEL)
Opinion and Order
———————————————————————

In November of 2006, Álvarez informed plaintiff for the first time that he was planning to move the accounting department for Servicios to Ponce, Puerto Rico. (Docket 35-2 at 34.)[3] On December 12, 2006, Rodríguez was notified in writing that the Accounting Department of Servicios was being moved to Ponce. (Docket 18-2 at ¶ 8; Docket 29-2 at 2; Docket 41-3.)[4] This notification was accompanied by offers of employment with either Servicios in Ponce, or with Andamios in its then current location. Id. Both offers entailed a reduction in pay and in supervisory duties from Rodríguez's position at the time. (Docket 29-2 at 4; Docket 34-2 at ¶ 32; Docket 35-3; Docket 35-2 at 21-24.)[5] On December 15, 2006, Rodríguez wrote a memorandum to Álvarez declining both offers and claiming that she had the legal right to remain in her current position with the same pay and duties, citing Puerto Rico law against pregnancy discrimination. (Docket 29-2 at 5; Docket 34-2 at ¶ 33; Docket 35-5; Docket 35-2 at 21-24.) Rodríguez states in her deposition that after rejecting both offers from Álvarez, he started pressuring her, shouting at her that she would not be the department supervisor, interrupting her work with contradictory instructions, and preventing her from working in order to train a new accountant. (Docket

---

[3]Although there is some confusion between the parties' statements of fact as to whether plaintiff admitted that this notification occurred in October of 2006, both parties cite to plaintiff's deposition, which clearly shows that plaintiff testified that Álvarez verbally notified her of the planned move to Ponce in November of 2006. (Docket 18-2 at ¶ 13; Docket 29-2 at 1, 3; Docket 34-2 at ¶ 31; Docket 35-2 at 34; Docket 41-2 at 33.)

[4]Although plaintiff denies this fact in her statement of uncontested facts, she does not support this denial with citation to evidence in the record as required by Local Rule 56(c) and Local Rule 56(e). Local Rule 56(c) requires that denials or qualifications of a moving party's statement of facts comply with Local Rule 56(e). Local Rule 56(e) provides that statements of fact will be deemed admitted unless properly controverted and that "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." Plaintiff simply denies defendants' statement of fact without record citation. (Docket 29-2 at 2.) Therefore, defendants' properly supported statement of fact, (Docket 18-2 at ¶ 8), is deemed admitted.

[5]See supra note 1. Although defendants do include a citation to support this denial, (Docket 34-2 at ¶ 32), they have neglected to submit the cited material.

3

Rodríguez v. Andamios de Puerto Rico, Inc., et al.
Civil No. 08-1408 (GAG/MEL)
Opinion and Order

29-2 at 5; Docket 34-2 at ¶ 34; Docket 35-2 at 29.)[6] Plaintiff continued working in the same position at the same pay and benefits. (Docket 18-2 at ¶ 11-12; Docket 29-2 at 2; Docket 41-2 at 65, 82.)[7]

On December 28, 2006, Álvarez began reprimanding Rodríguez and another accounting employee, Blanca Rivera ("Rivera"), for not giving priority to a task he considered more important. (Docket 18-2 at ¶ 14; Docket 29-2 at 5; Docket 34-2 at ¶ 35; Docket 35-2 at 40-41.)[8] Rodríguez testified that Álvarez started shouting at herself and Rivera, and grabbed papers out of Rivera's hand. (Docket 29-2 at 5; Docket 34-2 at ¶ 35; Docket 35-2 at 39-42.)[9] Rodríguez and Rivera then left the office. (Docket 18-2 at ¶ 14; Docket 29-2 at 5; Docket 34-2 at ¶ 35; Docket 35-2 at 40.) Rodríguez stated that she had to leave because her pregnancy was high risk and the environment was becoming too stressful. (Docket 29-2 at 5; Docket 34-2 at ¶ 35; Docket 35-2 at 42.)[10] Rodríguez then reported to the Puerto Rico State Insurance Fund ("SIF"), where she was examined by a doctor and told to rest. (Docket 29-2 at 5; Docket 34-2 at ¶ 35; Docket 41-5; Docket 35-2 at 53.)

On September 11, 2007, Rodríguez was authorized to resume working by the SIF. (Docket 18-2 at ¶ 16; Docket 29-2 at 2; Docket 41-6.) Rodríguez received a letter to this effect from SIF. ((Docket 18-2 at ¶ 17; Docket 29-2 at 2; Docket 41-2 at 56.) On September 28, 2007, a human resources officer for Servicios wrote a letter to Rodríguez notifying her that her employment guarantee with Servicios had expired and that she was no longer its employee. ((Docket 18-2 at ¶ 18; Docket 29-2 at 2; Docket

---

[6] See supra note 1.

[7] See supra note 4.

[8] See supra note 1.

[9] See supra note 1.

[10] See supra note 1.

Rodríguez v. Andamios de Puerto Rico, Inc., et al.
Civil No. 08-1408 (GAG/MEL)
Opinion and Order

35-8.) The accounting department for Servicios never actually moved to Ponce. (See Docket 35-6 at 10-11.)

**III.    LEGAL ANALYSIS**

    **A. Summary Judgment Standard**

Summary judgment may be entered only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 (1986). After the moving party has satisfied this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000).

To avoid summary judgment, the contested facts must be "material" and the dispute must be "genuine". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. Id. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. Id. It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Id. at 252.  It is therefore necessary that "a party opposing summary judgment must 'present definite, competent evidence to rebut the motion.'" Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994) (quoting Mesnick v. General

Rodríguez v. Andamios de Puerto Rico, Inc., et al.
Civil No. 08-1408 (GAG/MEL)
Opinion and Order

Elec. Co., 950 F.2d 816, 822 (1st Cir. 1993)).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citing Rossy v. Roche Prod., Inc., 880 F.2d 621, 624 (1st Cir. 1989)). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be)." Greenburg v. P. R. Mar. Shipping Auth., 835 F. 2d 932, 936 (1st Cir. 1987).

When considering a request for summary judgment, unsettled issues of motive and intent as to the conduct of any party will normally preclude the court from granting summary judgment. Mulero-Rodríguez v. Ponte, Inc., 98 F. 3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "'determinations of motive and intent...are questions better suited for the jury'"); see also Tew v. Chase Manhattan Bank, N.A., 728 F. Supp. 1551, 1555 (S.D.Fla. 1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.'"). However, "'even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation.'" Ayala-Genera v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996) (quoting Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993)).

6

Rodríguez v. Andamios de Puerto Rico, Inc., et al.
Civil No. 08-1408 (GAG/MEL)
Opinion and Order

### B. Disparate Treatment under Title VII

Title VII makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2000). "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). A plaintiff may rely on direct or circumstantial evidence in making a claim of employment discrimination. See Hidalgo v. Overseas Condado, 120 F.3d 328, 332-33 (1st Cir. 1997). The trial court must evaluate the evidence presented as a whole in order to determine if such evidence, whether direct or circumstantial, is sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by a discriminatory animus based on membership in a protected class. See Hidalgo, 120 F.3d at 335 (citing LeBlanc v. Great American Ins. Co., 6 F.3d 836, 843 (1st Cir. 1993).

As it appears that plaintiff has not presented direct evidence of discrimination, the court proceeds to consider whether she has presented evidence sufficient to create genuine issues of material fact as to the McDonnell Douglas burden-shifting framework. See Rivera-Aponte v. Rest. Metropol #3, Inc., 338 F.3d 9, 11 (1st Cir. 2003). When relying on circumstantial evidence, a plaintiff must make a *prima facie* case according to the McDonnell-Douglas burden-shifting framework. Id. Thus, the employee must establish that: (1) he or she is a member of the protected class; (2) his or her job performance and/or qualifications were satisfactory and met the employer's legitimate expectations; (3) that he or she suffered an adverse employment action; and (4) that defendant continued seeking a replacement or alternate candidate "with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills." See González, 304 F.3d at 68; Gu v. Boston Police

7

Case 3:08-cv-01408-GAG-MEL Document 48 Filed 05/08/09 Page 8 of 19

Rodríguez v. Andamios de Puerto Rico, Inc., et al.
Civil No. 08-1408 (GAG/MEL)
Opinion and Order

Dept., 312 F.3d 6, 11 (1st Cir. 2002); Feliciano, 218 F.3d at 5; Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 25 (1st Cir. 1997); Mesnick, 950 F.2d at 823. The required *prima facie* showing is not especially burdensome. See Greenberg v. Union Camp Corp., 48 F.3d 22, 26 (1st Cir. 1995); Sánchez v. P.R. Oil Co., 37 F.3d 712, 719 (1st Cir. 1994), Smith v. Stratus Computer, Inc., 40 F.3d 11, 15 n. 4 (1st Cir. 1994).

Establishing a *prima facie* case gives rise to an inference of discrimination. Mesnick, 950 F.2d at 823. While the burden of persuasion remains at all times with the plaintiff, the *prima facie* case shifts the burden of production to the employer, who must then articulate a legitimate non-discriminatory reason for the adverse employment action. Id. "This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the claimant's at all times." Id. (citing Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Medina-Muñoz, 896 F.2d at 9. If the employer meets this limited burden, the presumption created by the *prima facie* case disappears and the plaintiff "must adduce sufficient...evidence that [membership in a protected class] was a motivating factor in the challenged employment action." Zapata-Matos v. Reckitt & Coleman, Inc., 277 F.3d 40, 45 (1st Cir. 2002). To do so, plaintiff must show that the employer's reason is pretextual, thus allowing the factfinder to infer "discriminatory animus" behind the challenged employment action. González, 304 F.3d at 69. "It is not enough for a plaintiff to merely impugn the veracity of the employer's justification, he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's'" discriminatory motive. Mesnick, 950 F.2d at 824 (quoting Medina-Muñoz, 896 F.2d at 9).

Defendants concede the first two elements of plaintiff's *prima facie* case. (Docket 18 at 16.) With regard to the third element, defendants concede that plaintiff's discharge was an adverse

Rodríguez v. Andamios de Puerto Rico, Inc., et al.
Civil No. 08-1408 (GAG/MEL)
Opinion and Order
_____

employment action. Id.[11] Plaintiff also argues, however, that plaintiff suffered an adverse employment action when she was stripped of her supervisory duties. (Docket 29 at 11.) Plaintiff supports this argument with citation to her deposition, in which she states that Álvarez repeatedly shouted at her that she was "not the department supervisor anymore." (Docket 35-2 at 45.) Plaintiff also states that Álvarez prevented her from working on matters related to accounting so that a new employee could be trained. (Docket 35-2 at 29, 69.) Defendants do not counter these deposition statements with any citation to evidence in the record. (See Docket 34-2 at ¶ 31; Docket 34 at 2-3.) The Supreme Court has stated that a materially adverse employment action "constitutes a significant change in employment status" and could be a "reassignment with significantly different job responsibilities." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Therefore, plaintiff has presented evidence sufficient to establish a genuine issue of material fact as to whether her removal from supervisory duties or other accounting responsibilities constitutes an adverse employment action.

Defendants largely focus their arguments on the fourth element of the *prima facie* case, i.e., whether they continued seeking a replacement or alternate candidate "with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills." See Mesnick, 950 F.2d at 823. Plaintiff need not "show that the replacement was new to the company or specially designated

---

[11] Both parties spend significant time on the issue of whether plaintiff can establish a constructive discharge as an adverse employment action. "'Constructive discharge' is a label for treatment so hostile or degrading that no reasonable employee would tolerate continuing in the position." Melendez-Arroyo v. Cutler-Hammer de P.R. Co., 273 F.3d 30, 36 (1st Cir. 2001) (citing Serrano-Cruz, 109 F.3d at 26). In order to prove a constructive discharge as a tangible employment action, "a plaintiff must usually 'show that her working conditions were so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign.'" Lee-Crespo v. Scering-Plough Del Caribe, Inc., 354 F.3d 34, 45 (1st Cir. 2003) (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 28 (1st Cir. 2002)). There is no indication in the record, however, that plaintiff ever resigned from her position. The record indicates that plaintiff was actually discharged on September 28, 2007. Therefore, plaintiff cannot establish constructive discharge as an adverse employment action in the present case.

as such." Rodríguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 59 (1st Cir. 2005) (citing Loeb v. Textron, Inc., 600 F.2d 1003, 1013 (1st Cir. 1979)). Rather, plaintiff must demonstrate that her employer "had a continuing need for the work that she was performing prior to her termination." Id. (citing Keisling v. SER-Jobs for Progress, Inc., 19 F.3d 755, 760 (1st Cir. 1994)).

In the present case, plaintiff has provided evidence that defendants have retained another employee to handle general accounting, as well as other employees in the accounting department. (Docket 35-6 at 10-11, 70.) Rodríguez specifically claims that defendants hired Luz Mariel Santiago ("Santiago") to replace her. (Docket 29-2 at ¶ 16.) Defendants respond that Santiago was hired for the position in Ponce after plaintiff initially rejected that offer. (Docket 18 at 16.) Even if defendants did hire her for this purpose, however, plaintiff has presented evidence that Santiago handles the general accounting for the administrative structure of both Andamios and Servicios. (Docket 35-6 at 10-11.) Furthermore, Álvarez stated in his deposition that the accounting department was never moved to Ponce. (Docket 35-6 at 70.) Therefore, plaintiff has submitted evidence that creates a genuine issue of material fact as to whether defendants had a continuing need for the services provided by plaintiff during her employment.

To meet their burden of production as to plaintiff's termination of employment, defendants claim that they discharged Rodríguez because she failed to report to work within the fifteen day statutory period from her authorization to work from the SIF, as required by Puerto Rico workers' compensation law to guarantee her employment. See P.R. LAWS ANN. tit. 11, § 7; (Docket 18 at 11.) Defendants submit a letter from the SIF authorizing Rodríguez to return to work dated September 11, 2007. (Docket 41-6.) Defendants also submit a letter sent from Servicios informing Rodríguez of her

discharge effective September 28, 2007. (Docket 41-7.) Furthermore, defendants submit similar letters for Rivera, indicating that she, a non-pregnant employee, had been discharged for the same reasons. (Docket 41-10.)

The only evidence submitted by plaintiff to show that defendants' articulated reason was a pretext for discrimination are the comments made by Álvarez referring to plaintiff's pregnancy as a condition and mentioning the fact that Rodríguez occasionally left early for medical appointments. (Docket 35-2 at 17-18.) These comments can fairly be characterized as "stray remarks", which, by themselves, are not sufficient to show pretext or discriminatory animus. See González, 304 F.3d at 69-70. Furthermore, the comments were made at least nine months prior to Rodríguez's discharge and, from the manner in which Rodríguez describes them in her deposition, do not clearly reflect a discriminatory animus. See id.; (Docket 41-2 at 33; Docket 35-2 at 40-41, 43-44; Docket 35 at 8.) Given that plaintiff does not submit any other evidence to attack the authenticity of defendants' nondiscriminatory reason for her discharge or to show the requisite discriminatory animus, no rational factfinder could conclude that defendants' nondiscriminatory reason is a pretext and that the real reason for plaintiff's discharge was pregnancy discrimination.

As to stripping plaintiff of her supervisory duties, defendants seem to argue that any changes in the employment of plaintiff prior to her discharge resulted from the planned move of Servicios accounting department to Ponce. (Docket 18 at 16.) Defendant specifically claims that a new employee was hired for the position in Ponce after plaintiff rejected the offer included in the December 12, 2006 letter. Id. Plaintiff presents evidence, however, that Servicios never actually moved its accounting department to Ponce. (Docket 35-6 at 70.) Evidence showing contradictions in an employer's

11

nondiscriminatory reason can show pretext "such that a fact finder could 'infer that the employer did not act for the asserted non-discriminatory reasons.'" Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000) (quoting Hodgens v. General Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998)). Given plaintiff's evidence of contradiction as to defendants' nondiscriminatory reason for its conduct prior to her discharge in conjunction with the evidence supporting her *prima facie* case, it appears that plaintiff has established genuine issues of material fact as to the ultimate question of discrimination with regard to the stripping of supervisory duties and other accounting responsibilities in the present case.

**C. Hostile Work Environment**

The protection against discrimination in employment provided by Title VII has been expanded to areas beyond strictly "economic" and "tangible discrimination" to situations where "sexual harassment [is] so 'severe or pervasive' as to 'alter the condition [of the victim's] employment and create an abusive working environment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)); Collazo v. Nicholson, 535 F.3d 41, 44-45 (1st Cir. 2008); Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83 (1st Cir. 2006); Valentín-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006); Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005). An abusive work environment is created "'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficient severe or pervasive to alter the conditions of the victim's employment.'" Acevedo Vargas v. Colón, 68 F.Supp.2d 80, 92 (D.P.R. 1999) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 20 (1993)).

To sustain a hostile work environment claim, a plaintiff must prove: "(1) that she...is a member

of a protected class; (2) that she was subjected to unwelcome...harassment; (3) that the harassment was based upon [membership in the protected class]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that [the] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) some basis for employer liability has been established." O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001) (citing Faragher, 524 U.S. at 787-89; Harris, 510 U.S. at 20-23; Meritor, 477 U .S. at 65-73). Hostile work environment claims generally center on the severity and pervasiveness of the objectionable conduct and whether such conduct was both objectively and subjectively offensive. Id.

In Harris, 510 U.S. 17, 22 (1993), the Supreme Court noted that the test for proving a hostile work environment "is not, and by its nature cannot be, . . . mathematically precise." To determine whether an environment is sufficiently "hostile" or "abusive," a court must examine the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" do not create a hostile work environment. Faragher, 524 U.S. at 788 (quoting Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 82 (1998)). "[The Court's] function is one of screening, that is, to determine whether, on particular facts, a reasonable jury could reach such a conclusion." Noviello, 398 F.3d at 94 (citing Rivera-Rodríguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 24 (1st Cir. 2001).

Rodríguez v. Andamios de Puerto Rico, Inc., et al.
Civil No. 08-1408 (GAG/MEL)
Opinion and Order

In the context of pregnancy discrimination, Medina v. Adecco, 561 F. Supp. 2d 162, 173 (D.P.R. 2008), held that an employee had not alleged conduct sufficient to establish a hostile work environment where the employee had alleged that her supervisor commented every time she took a "pregnancy-related bathroom break" and the supervisor became upset when the employee would take "a snack break every two hours due to gestational diabetes." The court reasoned that the alleged conduct was not "severe, . . . humiliating, . . . physically threatening[, or] . . . sufficiently severe or pervasive to alter the conditions of [the employee's] employment" and did not interfere with the employee's work performance. Id. The court concluded that the conduct was not severe or pervasive enough to constitute a hostile work environment. Id.

In Zisumbo v. McLeodUSA Telecomm. Servs., Inc., 154 Fed. Appx. 715, 726-27 (10th Cir. 2005), however, a court held that an employee had presented evidence sufficient to establish a hostile work environment where a supervisor nicknamed the employee "prego", used that nickname in 75 percent of his interactions with the employee over a period of three months, and consistently harassed the employee by yelling and suggesting "that [the employee] quit or go on disability if she could not handle the stress of being pregnant." The court further noted that the supervisor did not treat other employees in the same way and had not treated the employee in this manner until after finding out that she was pregnant. Id. The court concluded that this evidence would allow a jury to find that the supervisor's conduct "was sufficiently severe and pervasive as to change the conditions" of the employee's employment with the company. Id.

O'Gorman v. Holland, No. 97 CIV. 0842, 2000 WL 134514 at *6 (S.D.N.Y. Feb. 3, 2000), and Cahill v. Northeast Savings, F.A., No. 91-CV-1278, 1993 WL 313633 at *8-9 (N.D.N.Y. Aug. 16,

14

Case 3:08-cv-01408-GAG-MEL Document 48 Filed 05/08/09 Page 15 of 19

Rodríguez v. Andamios de Puerto Rico, Inc., et al.
Civil No. 08-1408 (GAG/MEL)
Opinion and Order

1993), also held that employees presented sufficient evidence to establish hostile work environment claims. O'Gorman found sufficient evidence where a supervisor, after learning of an employee's pregnancy, made comments regarding that employee's unwillingness to resume working after her pregnancy, the supervisor made these comments continually over several months, and the comments "interfered with [the employee's] work and . . . caused her emotional distress." O'Gorman, 2000 WL 134514 at *6. Cahill found sufficient evidence where an the conduct of an employer and immediate supervisor drastically changed toward an employee, who had worked for the employer for fourteen years, after the announcement of her pregnancy. Cahill, 1993 WL 313633 at *8. The employee's immediate supervisor "allegedly began to berate [the employee,] . . . scream at her[, and] . . . refuse to speak with [the employee] unless she had an appointment." Id. The employee also received her first "negative evaluations, warnings, and reprimands" after the announcement. Id.

In the present case, plaintiff argues that Álvarez established a hostile work environment after learning of her pregnancy. (Docket 29 at 6-9.) Plaintiff claims that Álvarez: (1) sometimes referred to Rodríguez's pregnancy as a "condition"; (2) complained about Rodríguez leaving work early for medical appointments related to her pregnancy; (3) opened Rodríguez's office door several times and shouted that she was no longer the department supervisor several times in early December; (4) prevented Rodríguez from working on matters related to accounting in order to train a new employee; and (5) on December 28, 2006, shouted at plaintiff until she left work to report to the SIF. (Docket 35-2 at 29, 40-42, 44-45, 69.) The third and fourth actions alleged to have been committed by Álvarez do not appear, with perhaps the allegations of shouting excepted, to be parts of a hostile environment, but rather the adverse employment action on which plaintiff bases her Title VII disparate treatment. Because

Rodríguez v. Andamios de Puerto Rico, Inc., et al.
Civil No. 08-1408 (GAG/MEL)
Opinion and Order

hostile work environment claims are intended to extend Title VII coverage beyond "tangible discrimination", the court will limit its analysis to the conduct attributed to Álvarez that does not form the basis of Rodríguez's disparate treatment claim. See Faragher, 524 U.S. at 786.

Removing the conduct underlying plaintiff's adverse employment action, the remaining alleged actions amount to rudeness, ostracism, or conclusory statements insufficient to establish a hostile work environment. See Noviello, 398 F.3d at 92. Similar to Medina, 561 F. Supp. 2d at 173, some of the actions attributed to Álvarez are mere references to Rodríguez's pregnancy and breaks incident to her pregnancy. (Docket 35-2 at 44-45.) Although Rodríguez does describe some intimidating conduct, such as shouting, Álvarez did not use any offensive names and Rodríguez has not presented evidence of the continuous and prolonged harassment that is described by the courts in Zisumbo, 154 Fed. Appx. at 726-27, and O'Gorman, 2000 WL 134514 at *6.[12] Furthermore, unlike the employee in Cahill, 1993 WL 313633 at *8, Rodríguez has not presented evidence of a clear difference between fair treatment prior to pregnancy and abusive treatment after becoming pregnant. Therefore, it does not appear that plaintiff has presented evidence of the type of severe and abusive conduct that would establish a hostile work environment claim under Title VII.

**D. Individual Liability under Title VII**

The complaint includes claims under Title VII against Álvarez in his individual capacity. (Docket 16 at ¶¶ 8, 27-36.) The First Circuit has recently held that there is no individual liability under

---

[12] Zisumbo noted that "'[f]acially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other overtly gender-discriminatory conduct.'" Zisumbo, 154 Fed. Appx. at 726-27 (citing O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093, 1097 (10th Cir. 1999)).

Title VII. See Fantini v. Salem State Coll., 557 F.3d 22, 30-31(1st Cir. 2009). The court held that the definition of "employer" under Title VII and relatively recent amendments to Title VII indicate that individual liability is not available under the statute. Id. at 28-31. Therefore, the Title VII claim against Álvarez is hereby DISMISSED WITH PREJUDICE.

### E. Supplemental Jurisdiction

Title 28, United States Code, Section 1367 (2000) provides "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The scope of 28 U.S.C. 1367 regarding state law claims is illustrated by case law dealing with pendent jurisdiction. See e.g., Orria-Medina 565 F. Supp. 2d at 322-23. "Pendent jurisdiction exists whenever there is a claim arising under the Constitution, the Laws of the United States, and treaties made under their authority and the relationship between that claim and the state claim can be found to constitute, but one constitutional case." Id. at 322. The federal and state claims must "derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138 (1966); Confederación Laborista De P.R. v. Cervecería India, Inc., 607 F.Supp. 1077, 1081 (D.P.R. 1985).

In Gibbs, 383 U.S. at 726, the Supreme Court ruled that a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only

Rodríguez v. Andamios de Puerto Rico, Inc., et al.
Civil No. 08-1408 (GAG/MEL)
Opinion and Order

state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. See Martínez v. Colón, 54 F.3d 980, 990-91 (1st Cir. 1995).

In the present case, plaintiff alleges state law claims under Law 80, Law 100, Law 3, Law 69, Law 115, and Puerto Rico worker's compensation law. (Docket 16 at ¶¶ 37-42.) Plaintiff's claims under Law 80, Law 115, and Puerto Rico worker's compensation law depend on factual determinations regarding defendants' termination of her employment. Law 80 only provides a remedy for unjust dismissal and plaintiff limits her allegations of discriminatory conduct regarding Law 115 and Puerto Rico worker's compensation law to her discharge. P.R. LAWS ANN. tit. 29, § 185a; (Docket 16 at ¶ 40.) Plaintiff's only remaining federal claim is disparate treatment under Title VII based on removal from supervisory duties and accounting responsibilities, rather than her discharge. The court finds that the remaining federal claim and plaintiff's claims pursuant to on Law 80, Law 115, and Puerto Rico worker's compensation law do not "derive from a common nucleus of operative fact." Gibbs, 383 U.S. at 725. Therefore, the court declines to exercise supplemental jurisdiction over the state law claims pursuant to Law 80, Law 115, and Puerto Rico worker's compensation law.

Plaintiff's remaining state law claims pursuant to Law 100, Law 3, and Law 69 are not specifically limited, either by law or by allegations in the complaint, to factual issues regarding defendants' termination of her employment. See P.R. LAWS ANN. tit 29, § 469; P.R. LAWS ANN. tit. 29, § 1323; P.R. LAWS ANN. tit 29, § 146; (Docket 16 at ¶¶ 37-39.) Therefore, the court will retain supplemental jurisdiction over these claims.

IV. CONCLUSION

For the reasons explained above, the motion for summary judgment, (Docket 18), is hereby

Rodríguez v. Andamios de Puerto Rico, Inc., et al.
Civil No. 08-1408 (GAG/MEL)
Opinion and Order

GRANTED IN PART AND DENIED IN PART. The motion for summary judgment is GRANTED as to the disparate treatment claim based on defendants' termination of plaintiff's employment, the hostile work environment claim, and the claims pursuant to Law 80, Law 115, and Puerto Rico worker's compensation law. These claims are DISMISSED WITH PREJUDICE, except for plaintiff's claims pursuant to Law 80, Law 115, and Puerto Rico worker's compensation law, which are DISMISSED WITHOUT PREJUDICE due to the court's decision against the exercise of supplemental jurisdiction for said claims. The motion for summary judgment is DENIED as to the disparate treatment claim based on defendants' removal of plaintiff's supervisory duties and accounting responsibilities and the claims pursuant to Law 3, Law 69, and Law 100.

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, this 8th day of May, 2009.

                                          s/Marcos E. López
                                          U.S. MAGISTRATE JUDGE